W. L. RUMBO v. THE STATE.

*No. 6573.      Decided June 1.*

1.   **Theft.**—With regard to theft the rule of law in force in October, 1888, was that unless the accused acquired possession of the property by means of a false pretext or with intent at the very time of obtaining it of depriving the owner of the value thereof and appropriating the same to his own use and benefit, he would not be guilty of the theft of the same; and no subsequent appropriation or conversion would or could relate back to the original taking so as to make it theft.

2.   **Continuance—New Trial.**—See the opinion for the substance of evidence set forth in an application for continuance which, in view of the proof on the trial, entitled the defendant to a new trial.

APPEAL from the District Court of Hill. Tried below before Hon. J. M. Hall.

The conviction in this case was for the theft of a mare, and the penalty assessed was a term of five years in the penitentiary.

R. H. Edmonson was the first witness for the State. He testified that he was the owner of the mare which by the indictment was alleged to have been stolen on the 15th day of October, 1883. At the same time, and prior thereto, he was also the owner of a certain recipe for making soap. On or about August 1 of that year he employed the defendant to go to Cooke County for the purpose of selling the said recipe within the territory of said county. For the purpose of going to said Cooke County on the said business the witness delivered to the defendant his said mare, instructing him to make his headquarters in said county at the house of James Chadwell, witness's brother-in-law. Witness's son, Will Edmonson, went to Cooke County with the defendant and returned to witness's house about three weeks later, reporting to witness that he had left defendant at the house of James Chadwell. Defendant returned to witness's house in Hill County about September 1 and delivered the said mare to the witness. About two weeks later the defendant proposed to return to Cooke County for the purpose of prosecuting the sale of the recipe for making soap; and for the purpose and no other of resuming the said business in Cooke County and in no other, and upon the understanding that he was to go to the house of Chadwell and operate from that house, the witness again delivered the said mare to the defendant, and the defendant left the witness's place riding the said mare to go to Chadwell's house in Cooke County. The witness had never seen or heard of his mare since, and did not again see defendant until after his arrest, three years later. The defendant was not authorized to dispose of the said mare in any manner.

Will Edmonson, for the State, testified that he was the son of the preceding witness. His father was the owner of the mare described in the indictment, and to the knowledge of the witness delivered the possession of that mare to the defendant on or about August 1, 1883, for the purpose of going from Hill to Cooke County to sell a recipe for making soap. Witness went with defendant to Cooke County, riding another horse. He left defendant about two weeks later at the house of James Chadwell, in Cooke County, and returned to his father's house, in Hill County, Chadwell returning with him. During the time that witness remained at Chadwell's house the defendant rode about the country selling the said recipe. Defendant returned to Hill County soon after the witness did, and on or about September 15. proposed to witness's father to return to Chadwell's house, in Cooke County, and from thence resume the sale of the recipe. Thereupon witness's father again delivered him the mare to go to said Chadwell's house in Cooke County for the said purpose, and the defendant left with the mare, going towards Milford, which is in the

direction of Cooke County from witness's father's house in Hill County. Witness next saw the defendant in the Hill County jail in 1887.

James Chadwell testified for the State that late in July or early in August, 1883, the defendant, riding R. H. Edmonson's mare—the animal described in the indictment—in company with Will Edmonson, came to his, witness's, house in Cooke County.   As represented to witness, the business of the defendant in Cooke County was to sell in that county, as agent of R. H. Edmonson, a recipe for making soap.   About two weeks later the witness and Will Edmonson went to Hill County—the witness to visit R. H. Edmonson, who was his brother-in-law—leaving the defendant at witness's house.   Witness returned to his home about two weeks later and found defendant at his house.   Within the succeeding week the defendant, riding the said mare, left the witness's house to return to Edmonson's house in Hill County.   He never afterwards came to witness's house, and witness did not see him again until he saw him in jail in Hill County in 1887.

George Parrott testified for the State that early in September, 1883, he and A. F. Oaks overtook the defendant on the public road between the towns of Milford and Waxahachie, in Ellis County.   The defendant was riding such an animal as that described by the previous witnesses in this case.   Witness or Oaks asked the defendant where he was going.   Defendant in a jocular manner replied, "I am going to the Indian Nation to get me a squaw."   He did not correct that statement at any time afterwards.   The witness and defendant at that time were old batchelors and frequently joked each other about getting a squaw.   A. F. Oaks testified for the State substantially as did the witness Parrott.

John P. Cox, sheriff of Hill County, testified for the State that he arrested the defendant in the spring of 1887 near Columbia, Tennessee. No indictment other than the one on trial was then pending against defendant in Hill County.   The State closed.

W. J. and John Revier testified for the defense that they had known the defendant about thirty-five years and that his reputation for honesty had always been good.   This testimony was met on behalf of the State by the testimony of R. R. Rogers, who declared that the defendant's reputation for honesty was bad, and that prior to this offense the defendant to his knowledge had committed the offense of selling mortgaged property, the witness being the mortgagee.

*J. M. Johnson* and *B. D. Tarleton*, for appellant.

*W. L. Davidson*, Assistant Attorney-General, for the State.

WHITE, PRESIDING JUDGE.—When the appellant procured the mare from Edmonson the second time it was with the understanding that he

was going to return to Cooke County in order to sell the recipes for making soap. The question in the case was whether at the very time he so acquired possession of the mare his proposal to use her for such purpose was not a false pretext made by him in order to obtain possession of and steal her.

He acquired possession of the mare on the fifteenth day of October, 1883. By the law in force at that time unless he acquired the possession by means of a false pretext, or with intent at the very time of obtaining the property of depriving the owner of the value thereof and appropriating the same to his own use and benefit, he would not be guilty of the theft of the same (Penal Code, art. 727; Willson's Crim. Stats., sec. 1269), and no subsequent appropriation or conversion would or could relate back to the original taking so as to make it theft. The well settled rule of law on the fifteenth day of October, 1883, was that "where a horse was delivered on hire or loan, and such delivery was obtained bona fide, no subsequent wrongful conversion pending the contract would amount to a felony or make the offense larceny; and further, if one hired a horse and sold it before a journey was performed, or sold it after, before it was returned, he would not commit theft in case the felonious intent came upon him subsequently to receiving it into his possession. Morrison v. The State, 17 Texas Ct. App., 34.

Our present statute changes this rule, but it was not adopted until March 8, 1887 (Willson's Crim. Stats., art. 742a; Gen. Laws 20 Leg., 14), and consequently can not and moreover could not be applied to this case as charged in the indictment. Taylor v. The State, 25 Texas Ct. App., 97; Brooks v. The State, 26 Texas Ct. App., 184.

The question then in the case was, did defendant intend to steal the mare when he obtained possession of her from Edmonson to go to Cooke County, or did this intention come upon and actuate him subsequently?

Defendant made an application for continuance for two witnesses by whom he proposed to prove that they saw him in possession of the mare in Ellis County some days after he had gotten her from Edmonson; that he was then on the direct road leading from Edmonson's to Cooke County; that he told them the mare was Edmonson's, and that he was riding her to Cooke County to sell recipes for making soap for Edmonson. This application for continuance was overruled by the court because sufficient diligence was not shown. Suppose this be conceded, the question then upon the motion for new trial would be, was the evidence admissible, was it material, and was it probably true? The Assistant Attorney-General contends that the evidence was inadmissible, because the declarations of defendant sought to be proved were self-serving. We do not think that under the facts developed they would fall in that category. We are of opinion that any act or word said or done by defendant relating to or explanatory of his possession of the mare on his route from Edmonson's

to Cooke County would be *res gestæ* and admissible evidence upon the question of intent.   We are further of opinion that the evidence was material, might change the result of the trial, and was probably true—that is, that the witnesses would so testify, and that the testimony would be true as to the fact that they were told by defendant with regard to the mare just as is stated in the application for continuance.

In the light of the evidence adduced, we are of opinion the court should have granted the new trial on account of the testimony of these absent witnesses.   The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Judges all present and concurring.